BEACOM BROS. v. D. L. BOING.

(Decided March 13, 1900.)

*Cropper—Crops—Crop Lien—Abandonment by Cropper—*
*Landlord—Merchant.*

1. When a cropper abandons the crop before maturity, he forfeits all
   interest in the crop, which becomes fully the property of the
   landlord.

2. The contract of a cropper is an entire one, and when he fails to
   perform his part in full, he can not recover anything for the part
   performed.

3. When the cropper gives a lien to a merchant for supplies to be fur-
   nished and afterwards, without legal excuse and against the con-
   sent of the landlord, abandons the crop and fails to perform his
   part, he loses his interest in the crop and all right to a division
   of it; and there is nothing left for the lien of the merchant to
   operate on, and his lien on the cropper's share ceases with it
   necessarily. *Thigpen v. Leigh,* 93 N. C., 48.

CIVIL ACTION, heard on appeal from the Justice's Court
before *Hoke, J.,* at October Term, 1899, of VANCE Superior
Court.   The defendant was sued "to answer the complaint
of plaintiffs for the unlawful and wrongful detention of cer-
tain cotton and tobacco belonging to C. E. Pegram and J.
Stallings of the value of $25, upon which plaintiffs have a
valid mortgage, and which have been demanded by said plain-
tiffs and the demand refused."

There was a verdict in favor of plaintiffs for one-half net
amount defendant admitted to be the value of the entire crop
detained by him, to-wit, $11.48.   Upon the evidence adduced,
the defendant asked his Honor to charge that the plaintiffs
could recover nothing, which his Honor declined to do.   De-
fendant excepted.

Judgment in favor of plaintiffs for $11.48 and costs.   Defendant appealed.   The evidence is fully given in the opinion, and need not be recapitulated.

*Mr. T. T. Hicks,* for appellant.
*Mr. A. C. Zollicoffer,* for appellee.

MONTGOMERY, J.   The defendant, as agent of his wife, rented her tract of land known as the "Ward Place," for the year 1898, to C. E. Pegram and J. Stallings for one-half of the crop as rent, the owner to furnish the team and implements.   The croppers during that year executed to the plaintiffs a chattel mortgage on their crop to secure their note given for supplies, to be furnished to them by the plaintiffs, with which to make the crops.   In June of that year, the croppers Pegram and Stallings abandoned the crop and left the premises.   After all these occurrences, John J. Pegram, father of C. E. Pegram, had a conversation with the defendant—defendant's wife being present—concerning the crop and rental, and it was agreed between them that J. J. Pegram was to "take charge of the crop and work it, and witness and Boing agreed that witness J. J. Pegram should work the crop till it was matured, and pay off the plaintiff's mortgage for supplies advanced, pay one-half the fertilizer, and defendant was to furnish witness the team and to get one-half the product."   The larger part of the supplies had been furnished the original croppers while they were on the place, and the balance was furnished to J. J. Pegram after the new arrangement had been made.   The crops were cultivated, according to the new agreement, by J. J. Pegram until their maturity, and they were gathered in sufficient quantities to pay off the debt for fertilizers, and then Pegram was ordered off the land

and forbidden to come back for any purpose, the defendant at the same time taking into his possession all the crops then remaining on the land.

This action was brought in the Court of a Justice of the Peace, as appears from the summons, to recover a certain part of the crop belonging to C. E. Pegram and J. A. Stallings, which the plaintiffs claimed was applicable to their mortgage and which was wrongfully detained by him. The summons, the issues and the evidence all show that the case was tried in the Superior Court on the theory that the chattel mortgage was valid and subsisting, and that it was kept in force by the new agreement made between the defendant and J. J. Pegram.

In its present form the action can not be maintained. When the original croppers abandoned the crop, they at the same time forfeited all interest in them, and the crops became fully the property of the defendant's wife, and there was nothing left on which the mortgage of the plaintiff could operate. The contract between the defendant and the original croppers was an entire one, and the croppers, when without legal excuse and against the consent of the defendant, they refused to perform the remaining part, can not recover anything for the part performed. The case of *Thigpen v. Leigh,* 93 N. C., 48, is exactly in point. There, the Court said: "Thigpen, by his advancements to Riddick, who was a cropper, acquired no right of property in the crop planted and cultivated by him, but only the right to have his advances repaid out of that part of the crop that might fall to Riddick's share thereof on a division between him and the defendant. But Riddick, by his abandonment of the crop and his failure to perform his part of the contract, had lost his interest in, and all right to a division of it. There was then nothing left upon which

the lien of Thigpen could operate, and out of which his demand could be satisfied. Riddick's right to a share of the crop having ceased, Thigpen's lien on the share necessarily ceased with it."

It appears in the record in this case that an order was entered that J. J. Pegram should be made a party-plaintiff, but the order was not carried into effect. If it had been, however, the present plaintiffs could not have been benefitted thereby in the present form of the action, for whatever rights either J. J. Pegram or the plaintiffs may have in the crops or in the proceeds of their sale now in the hands of the defendant arose out of the terms of the new agreement made between the defendant and J. J. Pegram. From this view of the case it is unnecessary for us to consider the other interesting questions raised on the trial. The judgment must be

Reversed.